

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED
DEC 0 6 2004

Michael N. Milby, Clerk

| | | |
|---|---|---|
| ROBERT P. BERG<br>d/b/a BOB BERG BUCKLES<br>d/b/a SILVERDALES,<br><br>Plaintiff,<br><br>v.<br><br>JOANNE SYMONS<br>d/b/a HYOSILVER, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. H-03-2683 |

## PLAINTIFF ROBERT P. BERG'S OPPOSITION TO DEFENDANT JOANNE SYMONS' MOTION FOR PARTIAL SUMMARY JUDGMENT -- IMPLIED LICENSE

### SUMMARY

Defendant Joanne Symons moves for partial summary judgment of non-infringement of copyright and trade dress arguing that Ms. Symons received an implied license from Mr. Berg to copy his trade dress and western jewelry designs. This motion should be denied because there was no such implied license. On the contrary, the parties divorce agreement, which was prepared by Joanne Symons' lawyers and which the parties entered into by consent, expressly gave all such rights to Mr. Berg. The only implied license that Ms. Symons was arguably given was the right to sell the limited existing jewelry inventory that she was awarded in the divorce decree. The divorce decree gave Ms. Symons no other rights whatsoever.

The Court is also invited specifically to review the factual statement by Ms. Symons counsel on page 2 of her motion stating "Ms. Symons was also awarded casts and pieces of equipment to make the pieces associated with the copyrighted works." This critical statement is

both factually incorrect and unsupported in the motion or the divorce papers. Mr. Berg should not be subject to a continued barrage of such factually incorrect and unsupportable statements. Why litigants and their counsel believe that the Courts are places where it is acceptable for such factually specious arguments to be fabricated from whole cloth is beyond the understanding of this counsel. The Court should send a signal that such conduct will not be tolerated.

## **FACTUAL BACKGROUND**

The parties to this case are former spouses of a marriage that terminated on March 3, 2000, after Ms. Symons had informed Mr. Berg that she was having a long-term affair with her present husband. Negotiations of the terms of the divorce decree spanned several months. Leading up to the decree, the parties first entered into a Rule 11 agreement on or about October 19, 1999. The parties subsequently had discussions from that time until February 11, 2000 when the parties signed a mediated settlement agreement. Joanne Symons' attorneys then prepared the Final Decree of Divorce (a copy of which is attached as Exhibit A) which the parties and the Court then approved and signed on March 3, 2000.

In agreeing to the terms of the divorce decree, Ms. Symons bargained for and received custody of the children, her house (whereas Mr. Berg was forced to sell his with the proceeds going to the Defendant), the vast majority of the couple's possessions, and even approximately $200,000 worth of existing jewelry inventory to sell for income while Ms. Symons developed her own name, reputation, and product line. In exchange, she agreed to give up any and all rights arising from or created in connection with the operation of Bob Berg Buckles and Silverdales. Mr. Berg had started these two businesses prior to the marriage and developed numerous jewelry designs, and established the "Bob Berg" signature look, as well as his name, fame, and

reputation in the United States and Australia as a master western jewelry craftsman in connection with the operation of these businesses.

The agreement of the parties was subsequently reflected in the divorce decree that was written by Joanne Symons' lawyers.  In the consent divorce decree, as agreed, all past, present, and future rights arising out of or in connection with the operation of Bob Berg Buckles and Silverdales were awarded to Mr. Berg in paragraphs H-6 and H-7.[1]

Indeed, paragraph 6 of the Final Decree of Divorce (attached) contains a section 5, entitled "Agreement of the Parties" which states:

> The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance.  To the extent permitted by law, the parties stipulate that the agreement is enforceable as a contract.  The Court approves the agreement of the parties as contained in this Final Decree of Divorce.

Notwithstanding Ms. Symons agreements in the divorce decree, which was entered by the Court on March 3, 2000, Ms. Symons subsequently engaged in a number of unfair practices after the divorce that were also contrary to the divorce agreement.  For example, Ms. Symons without the permission or knowledge of Mr. Berg subverted Mr. Berg's manufacturing personnel, factory, signature jewelry designs, and even raw materials, to manufacture copies of the Berg jewelry for sale by her newly formed company, Hy O Silver.  Moreover, again without Mr. Berg's permission, Ms. Symons appropriated mirror images of Berg's advertising showing his signature jewelry designs to promote the sales of her Hy O Silver imitations in the same markets as Mr. Berg.

---

[1] See, H-6: "The business known as Bob Berg Buckles, including but not limited to all fixtures, inventory, cash, receivables, accounts, goods, and supplies; **and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business."**  (Emphasis supplied.)

She also represented to Mr. Berg's customers that Mr. Berg's business name had changed to Hy O Silver (also implying that Mr. Berg was no longer in business). She used the local and 800 telephone number for Bob Berg Buckles and Silverdales as the local and 800 telephone number for Hy O Silver. She even diverted funds from a contract for rodeo buckles between Bob Berg Buckles and the Reno Rodeo using buckles made and paid for by Bob Berg Buckles. After years of legal battles on various state court fronts in which nothing was resolved, Mr. Berg brought this federal case.

## ARGUMENT

Ms. Symons is allowed to fairly compete with Mr. Berg. There is a vast universe of possible western jewelry designs to sell, and she is free to develop and sell any number of her own designs and profit therefrom. She is free to make her own name and create her own distinct look. She is free to spend time and money building an association in the relevant market between her own distinct look and her name. She is free to innovate, build her own factories, and perfect her own methods of making western jewelry. She is free to compete for the very same contracts that Mr. Berg has been awarded on the basis of his fame and reputation. Like any other business, she is not, however, allowed to make her business using Mr. Berg's name and fame, copying his signature look and product designs.

Given the circumstances leading to the divorce, Mr. Berg was generous. Ms. Symons bargained for and received custody of the children, her house (whereas Mr. Berg was forced to give up his), the vast majority of the couple's possessions, and even approximately $200,000 worth of jewelry inventory to sell while Ms. Symons developed her own name, reputation, and product line. In exchange, she agreed to give up any and all rights arising from or created in connection with the operation of Bob Berg Buckles or Silverdales, Mr. Berg's prior businesses.

4

Ms. Symons now makes much of the fact that she was given in the divorce jewelry inventory to sell. Clearly, the fact that she was awarded jewelry inventory to sell gave her the right to sell the inventory she was awarded. This case has never been about stopping Ms. Symons from selling the jewelry inventory in existence at the time of the March 3, 2000 divorce. While substantial in value, this jewelry was limited. Ms. Symons herself acknowledged that she had depleted half the inventory she was awarded within ten months of the divorce.

But Ms. Symons subsequently went beyond merely selling this inventory. She has since made copies of Mr. Berg's western jewelry designs to continually replenish the inventory she was given at the time of the divorce. In doing so, Ms. Symons has violated both the divorce agreement and Mr. Berg's intellectual property rights to his name, fame, trade dress, and copyrighted western jewelry designs. She even used Mr. Berg's manufacturing facilities without his permission in order to make her new inventory of his jewelry designs.

Contrary to the arguments now made by Ms. Symons, she was not awarded any manufacturing rights at any time. On the contrary, the Rule 11 Agreement expressly allowed the "existing inventories" at the time of the divorce to be checked out from the receiver only "for the purpose of sale." Rule 11 Agreement, ¶ 2. Indeed, according to the Rule 11 Agreement, Ms. Symons was not even permitted to go to shows to sell the inventory. Id., ¶ 4. There is nothing that gives Ms. Symons any manufacturing rights; only that Ms. Symons was permitted to makes sales for delivery after February 1, 2000. Id., ¶ 14.

Nor does the mediated settlement agreement provide Ms. Symons with any manufacturing equipment. She was given the inventory in her possession or the receiver's possession and sales equipment from the San Antonio rodeo, essentially a sales booth, and other sales paraphernalia. Again there is no mention of any manufacturing equipment or casts as now

asserted.  On the contrary, the business records and complete customer lists of Bob Berg Buckles and Silverdale's were to be turned over by Ms. Symons to Mr. Berg within twenty days. Mediated Settlement Agreement, page 6, ¶ 7.

Both the mediated settlement agreement and the Rule 11 Agreement were superseded by the consent divorce decree (not attached to Ms. Symons subject motion) entered by the parties which further clarified that Mr. Berg was to have all business rights arising from or in connection with the operation of Bob Berg Buckles or Silverdales.  The divorce decree mentions no manufacturing or other rights whatsoever, nor does it mention castings or any other manufacturing equipment being awarded to Ms. Symons, not does it mention the grant of any license to Ms. Symons.  On the contrary, all the fixtures, goods and supplies of Bob Berg Buckles and Silverdales were awarded to Mr. Berg.  Hy O Silver's only right prior to the termination of the marriage was the right to sell the existing inventory awarded to Ms. Symons. No right to make any other use of Mr. Berg's designs or to manufacture imitations of Mr. Berg's jewelry were given, and no right to compete unfairly with Mr. Berg using his own designs, or other jewelry with his signature look, or his name and fame were awarded.

Defendant also relies on her Request for Admission Nos. 39 and 40 for the proposition that Defendant was given an implied license.  For the reasons stated in his other motion, Plaintiff has moved to withdraw or amend these deemed admissions, and has therefore <u>denied</u> these admissions.

## **CONCLUSION**

In light of the above, Defendant Joanne Symons' motion for partial summary judgment of non-infringement of copyright and trade dress arguing that Ms. Symons received an implied

license from Mr. Berg to copy his trade dress and western jewelry designs should be denied because there was no such implied license.

Respectfully submitted,

**GOLDEN & RHODES, LLP**

Date: _12/6/2004_

By: _____

_Philip T. Golden_
Attorney-in-Charge
Texas State Bar No. 08089502
S.D. Texas No. 14,138

6750 West Loop South, Suite 920
Bellaire, Texas 77401
Telephone: (713) 592-6662
Facsimile: (713) 592-6632

ATTORNEY FOR PLAINTIFF,
ROBERT P. BERG d/b/a BOB BERG
BUCKLES d/b/a SILVERDALES

**OF COUNSEL**

Sandy Seth
Texas State Bar No. 18043000
S.D. Texas No. 433161
**SETH & ASSOCIATES**
6750 West Loop South, Suite 920
Bellaire, Texas 77401
Telephone: (713) 592-8500
Facsimile: (713) 592-8506

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Plaintiff Robert P. Berg's Opposition to Defendant Joanne Symons Motion for Partial Summary Judgment of Non-Infringement (Implied License) was sent by first class U.S. Mail on _____ 12/6/2004 _____ to the following counsel of record:

> Ms. Jody M. Goldstein
> Goldstein & Faucett, LLP
> 1177 West Loop South, Suite 400
> Houston, Texas 77027
> Telephone: (713) 877-1515
> Facsimile: (713) 877-1737

_____
Philip T. Golden

S:\Berg, Bob\Pleadings\P's Opp to D's M for Partial SJ (Implied License).doc

Exhibit A

DISTRICT COURT
DATES
DAVID R. LLOYD
District Clerk John No. **D1999 05361**
County, Texas

FILED
_____ P.M.
**3** day of *Mar* 20 *00*
DAVID R. LLOYD
District Clerk, Johnson County, Texas
BY _____ DEPUTY

IN THE MATTER OF                      §        IN THE DISTRICT COURT
THE MARRIAGE OF                       §
                                      §
ROBERT PETER BERG                     §
AND                                   §        249 TH JUDICIAL DISTRICT
JOANNE DOROTHY BERG                   §
                                      §
AND IN THE INTEREST OF                §
JOSIE ANN BERG, ROBERT COLIN          §
BERG AND KATHRYN MARY SUSAN           §        JOHNSON COUNTY, TEXAS
BERG, CHILDREN                        §

### FINAL DECREE OF DIVORCE

On February 11, 2000 the Court heard this case.

*1.     Appearances*

Petitioner, ROBERT PETER BERG, appeared in person and through attorney of record,

Minor E. Pounds, and announced ready for trial.

Respondent, JOANNE DOROTHY BERG, appeared in person and through attorney of

record, William C. Bosworth, Jr., and announced ready for trial.

*2.     Record*

The record of testimony was duly reported by the court reporter for the 249 th Judicial

District Court.

*3.     Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations,

information, and prerequisites required by law.  The Court, after receiving evidence, finds that it has

jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date

the suit was filed.  The Court finds that, at the time this suit was filed, Petitioner had been a

domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit

FINAL DECREE OF DIVORCE                                        PAGE  1

was filed for the preceding ninety-day period.  All persons entitled to citation were properly cited.

4.    *Jury*

A jury was waived, and all questions of fact and of law were submitted to the Court.

5.    *Agreement of the Parties*

The Court finds that the parties have entered into a written agreement as contained in this

decree by virtue of having approved this decree as to both form and substance.  To the extent

permitted by law, the parties stipulate the agreement is enforceable as a contract.  The Court approves

the agreement of the parties as contained in this Final Decree of Divorce.

6.    *Divorce*

IT IS ORDERED AND DECREED that ROBERT PETER BERG, Petitioner, and JOANNE

DOROTHY BERG, Respondent, are divorced and that the marriage between them is dissolved on

the ground of insupportability.

7.    *Children of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following children:

Name:  JOSIE ANN BERG
Sex:      Female
Birthplace:     Ipswich, Queensland, Australia
Birth date:     September 4, 1985
Home state:    Texas

Name:  ROBERT COLIN BERG
Sex:      Male
Birthplace:     Ipswich, Queensland, Australia
Birth date:     October 10, 1987
Home state:    Texas

Name:  KATHRYN MARY SUSAN BERG
Sex:      Female
Birthplace:     Ipswich, Queensland, Australia
Birth date:     June 7, 1989
Home state:    Texas

The Court finds no other children of the marriage are expected.

8.    *Conservatorship and Support*

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that JOANNE DOROTHY BERG is appointed a parent sole managing conservator and ROBERT PETER BERG is appointed a parent possessory conservator of the following children: JOSIE ANN BERG, ROBERT COLIN BERG and KATHRYN MARY SUSAN BERG.

IT IS ORDERED that, at all times, JOANNE DOROTHY BERG, as a parent sole managing conservator, shall have the following rights and duty:

1.    the right to receive information from the other parent concerning the health, education, and welfare of the children;

2.    the duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the children;

3.    the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

4.    the right of access to medical, dental, psychological, and educational records of the children;

5.    the right to consult with a physician, dentist, or psychologist of the children;

6.    the right to consult with school officials concerning the children's welfare and educational status, including school activities;

7.    the right to attend school activities;

7(A)    THE AUTHORITY TO EXECUTE ANY DOCUMENT NECESSARY TO RENEW PASSPORTS AND VISAS FOR THE CHILDREN.

8.    the right to be designated on the children's records as a person to be notified in case of an emergency;

9.    the right to consent to medical, dental, and surgical treatment during an emergency

involving an immediate danger to the health and safety of the children; and

      10.    the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, ROBERT PETER BERG, as a parent possessory conservator, shall have the following rights and duty:

      1.    the right to receive information from the other parent concerning the health, education, and welfare of the children;

      2.    the duty to inform the other parent in a timely manner of significant information concerning the health, education, and welfare of the children;

      3.    the right of access to medical, dental, psychological, and educational records of the children;

      4.    the right to consult with a physician, dentist, or psychologist of the children;

      5.    the right to consult with school officials concerning the children's welfare and educational status, including school activities;

      6.    the right to attend school activities;

      7.    the right to be designated on the children's records as a person to be notified in case of an emergency;

      8.    the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children;

      9.    the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family;

IT IS ORDERED that, during her respective periods of possession, JOANNE DOROTHY BERG, as a parent sole managing conservator, shall have the following rights and duties:

      1.    the duty of care, control, protection, and reasonable discipline of the children;

2.      the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.      the right to consent for the children to medical and dental care not involving an invasive procedure;

4.      the right to consent for the children to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the children; and

5.      the right to direct the moral and religious training of the children.

IT IS ORDERED that, during his respective periods of possession, ROBERT PETER BERG, as a parent possessory conservator, shall have the following rights and duties:

1.      the duty of care, control, protection, and reasonable discipline of the children;

2.      the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.      the right to consent for the children to medical and dental care not involving an invasive procedure;

4.      the right to consent for the children to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the children; and

5.      the right to direct the moral and religious training of the children.

IT IS ORDERED that JOANNE DOROTHY BERG, as parent sole managing conservator, shall have the following exclusive rights and duty:

1.      the right to establish the primary residence of the children;

2.      the right to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the children;

3.      the right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

4.    the right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

5.    the right to consent to marriage and to enlistment in the armed forces of the United States;

6.    the right to make decisions concerning the children's education;

7.    the right to the services and earnings of the children;

8.    except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

9.    the duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

IT IS ORDERED that each parent shall have the duty to inform the other parent if the parent resides with for at least 30 days, marries, or intends to marry a person who the parent knows:  1) is registered as a sex offender under Chapter 62, Code of Criminal Procedure; or 2) is currently charged with an offense for which on conviction the person would be required to register under that chapter. This notice shall be made as soon as practicable but not later than the 40th day after the date the parent begins to reside with the person or the 10th day after the date the marriage occurs, as appropriate.  The notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged.

### Standard Possession Order

The Court finds that the following provisions of this Standard Possession Order are intended to and do comply with the requirements of Texas Family Code sections 153.311 through 153.317. IT IS ORDERED that Sole Managing Conservator and Possessory Conservator shall comply with all terms and conditions of this Standard Possession Order.  IT IS ORDERED that this Standard

Possession Order is effective immediately and applies to all periods of possession occurring on and after the signing of this Standard Possession Order. IT IS, THEREFORE, ORDERED:

(a)     <u>Definitions</u>

1.     In this Standard Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.     In this Standard Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)     <u>Mutual Agreement or Specified Terms for Possession</u>

IT IS ORDERED that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Standard Possession Order.

(c)     <u>Parents Who Reside 100 Miles or Less Apart</u>

Except as otherwise explicitly provided in this Standard Possession Order, when Possessory Conservator resides 100 miles or less from the primary residence of the child, Possessory Conservator shall have the right to possession of the child as follows:

1.     <u>Weekends</u> - On weekends, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

2.     <u>Weekend Possession Extended by a Holiday</u> - Except as otherwise explicitly provided in this Standard Possession Order, if a weekend period of possession by Possessory Conservator begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if

the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable.

3.    <u>Wednesdays</u> - On Wednesday of each week during the regular school term, beginning at 6:00 p.m. and ending at 8:00 p.m. as agreed by the parties.

4.    <u>Christmas Holidays in Even-Numbered Years</u> - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26.

5.    <u>Christmas Holidays in Odd-Numbered Years</u> - In odd-numbered years, beginning at noon on December 26 and ending at 6:00 p.m. on the day before the child's school resumes after that Christmas school vacation.

6.    <u>Thanksgiving in Odd-Numbered Years</u> - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

7.    <u>Spring Break in Even-Numbered Years</u> - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

8.    <u>Extended Summer Possession by Possessory Conservator</u>

<u>With Written Notice by April 1</u> - If Possessory Conservator gives Sole Managing Conservator written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, Possessory Conservator shall have possession of the child for thirty days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice.  These periods of possession shall begin and end at 6:00 p.m.

<u>Without Written Notice by April 1</u> - If Possessory Conservator does not give Sole Managing Conservator written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, Possessory Conservator shall have possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

9.    <u>Child's Birthday</u> - If Possessory Conservator is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, Possessory Conservator shall have possession of the child and the child's siblings beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that Possessory Conservator picks up the child from Sole Managing Conservator's residence and returns the child to that same place.

10.    Father's Day Weekend - Each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if he is not otherwise entitled under this Standard Possession Order to present possession of the child, he shall pick up the child from Sole Managing Conservator's residence and return the child to that same place.

Notwithstanding the weekend and Wednesday periods of possession ORDERED for

Possessory Conservator, it is explicitly ORDERED that Sole Managing Conservator shall

have a superior right of possession of the child as follows:

1.    Christmas Holidays in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26.

2.    Christmas Holidays in Even-Numbered Years - In even-numbered years, beginning at noon on December 26 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3.    Thanksgiving in Even-Numbered Years - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the following Sunday.

4.    Spring Break in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

5.    Summer Weekend Possession by Sole Managing Conservator - If Sole Managing Conservator gives Possessory Conservator written notice by April 15 of a year, Sole Managing Conservator shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of the extended summer possession by Possessory Conservator in that year, provided that Sole Managing Conservator picks up the child from Possessory Conservator and returns the child to that same place.

6.    Extended Summer Possession by Sole Managing Conservator - If Sole Managing Conservator gives Possessory Conservator written notice by April 15 of a year or gives Possessory Conservator fourteen days' written notice on or after April 16 of a year, Sole Managing Conservator may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by Possessory Conservator shall not take place in that year, provided that the weekend so designated does not interfere with Possessory Conservator's period or periods of extended summer possession or with Father's Day Weekend.

7. <u>Child's Birthday</u> - If Sole Managing Conservator is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, Sole Managing Conservator shall have possession of the child and the child's siblings beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that Sole Managing Conservator picks up the child from Possessory Conservator's residence and returns the child to that same place.

8. <u>Mother's Day Weekend</u> - Each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if Sole Managing Conservator is not otherwise entitled under this Standard Possession Order to present possession of the child, she shall pick up the child from Possessory Conservator's residence and return the child to that same place.

Sole Managing Conservator shall have the right of possession of the child at all other times not specifically designated in this Standard Possession Order for Possessory Conservator.

(d)     Parents Who Reside More Than 100 Miles Apart

Except as otherwise explicitly provided in this Standard Possession Order, when Possessory Conservator resides more than 100 miles from the residence of the child, Possessory Conservator shall have the right to possession of the child as follows:

1. <u>Weekends</u> - On weekends, beginning at 6:00 p.m. on the first, third, and fifth Friday of each month, and ending at 6:00 p.m. on the following Sunday. Except as otherwise explicitly provided in this Standard Possession Order, if a weekend period of possession by Possessory Conservator begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable.

2. <u>Christmas Holidays in Even-Numbered Years</u> - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26.

3. <u>Christmas Holidays in Odd-Numbered Years</u> - In odd-numbered years, beginning at noon on December 26 and ending at 6:00 p.m. on the day before the child's school resumes after that Christmas school vacation.

4.     Thanksgiving in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5.     Spring Break in All Years - Every year, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

6.     Extended Summer Possession by Possessory Conservator -

With Written Notice by April 1 - If Possessory Conservator gives Sole Managing Conservator written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, Possessory Conservator shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice.  These periods of possession shall begin and end at 6:00 p.m.

Without Written Notice by April 1 - If Possessory Conservator does not give Sole Managing Conservator written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, Possessory Conservator shall have possession of the child for forty-two consecutive days beginning at 6:00 p.m. on June 15 and ending at 6:00 p.m. on July 27 of that year.

7.     Child's Birthday - If Possessory Conservator is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, Possessory Conservator shall have possession of the child and the child's siblings beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that Possessory Conservator picks up the child from Sole Managing Conservator's residence and returns the child to that same place.

8.     Father's Day Weekend - Each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if Possessory Conservator is not otherwise entitled under this Standard Possession Order to present possession of the child, he shall pick up the child from Sole Managing Conservator's residence and return the child to that same place.

Notwithstanding the weekend periods of possession ORDERED for Possessory Conservator, it is explicitly ORDERED that Sole Managing Conservator shall have a superior right of possession of the child as follows:

1.     Christmas Holidays in Odd-Numbered Years - In odd-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 26.

2.   <u>Christmas Holidays in Even-Numbered Years</u> - In even-numbered years, beginning at noon on December 26 and ending at 6:00 p.m. on the day before school resumes after that Christmas school vacation.

3.   <u>Thanksgiving in Even-Numbered Years</u> - In even-numbered years, beginning at 6:00 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the following Sunday.

4.   <u>Summer Weekend Possession by Sole Managing Conservator</u> - If Sole Managing Conservator gives Possessory Conservator written notice by April 15 of a year, Sole Managing Conservator shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of possession by Possessory Conservator during Possessory Conservator's extended summer possession in that year, provided that if a period of possession by Possessory Conservator in that year exceeds thirty days, Sole Managing Conservator may have possession of the child under the terms of this provision on any two nonconsecutive weekends during that period and provided that Sole Managing Conservator picks up the child from Possessory Conservator and returns the child to that same place.

5.   <u>Extended Summer Possession by Sole Managing Conservator</u> - If Sole Managing Conservator gives Possessory Conservator written notice by April 15 of a year, Sole Managing Conservator may designate twenty-one days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which Possessory Conservator shall not have possession of the child, provided that the period or periods so designated do not interfere with Possessory Conservator's period or periods of extended summer possession or with Father's Day Weekend.

6.   <u>Child's Birthday</u> - If Sole Managing Conservator is not otherwise entitled under this Standard Possession Order to present possession of the child on the child's birthday, Sole Managing Conservator shall have possession of the child and the child's siblings beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that Sole Managing Conservator picks up the child from Possessory Conservator's residence and returns the child to that same place.

7.   <u>Mother's Day Weekend</u> - Each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if Sole Managing Conservator is not otherwise entitled under this Standard Possession Order to present possession of the child, she shall pick up the child from Possessory Conservator's residence and return the child to that same place.

Sole Managing Conservator shall have the right of possession of the child at all other times not specifically designated in this Standard Possession Order for Possessory Conservator.

FINAL DECREE OF DIVORCE                                                PAGE  12

(e)     General Terms and Conditions

Except as otherwise explicitly provided in this Standard Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.     <u>Surrender of Child by Sole Managing Conservator</u> - Sole Managing Conservator is ORDERED to surrender the child to Possessory Conservator at the beginning of each period of Possessory Conservator's possession at the residence of Sole Managing Conservator.

2.     <u>Return of Child by Possessory Conservator</u> - Possessory Conservator is ORDERED to return the child to the residence of Sole Managing Conservator at the end of each period of possession.  However, it is ORDERED that, if Possessory Conservator's county of residence remains the same as it is forty five days after signing of this order by the Court, and Sole Managing Conservator's county of residence changes, effective on the date of the change of residence by Sole Managing Conservator, Possessory Conservator shall surrender the child to Sole Managing Conservator at the residence of Possessory Conservator at the end of each period of possession.

3.     <u>Surrender of Child by Possessory Conservator</u> - Possessory Conservator is ORDERED to surrender the child to Sole Managing Conservator, if the child is in Possessory Conservator's possession or subject to Possessory Conservator's control, at the beginning of each period of Sole Managing Conservator's exclusive periods of possession, at the place designated in this Standard Possession Order.

4.     <u>Return of Child by Sole Managing Conservator</u> - Sole Managing Conservator is ORDERED to return the child to Possessory Conservator, if Possessory Conservator is entitled to possession of the child, at the end of each of Sole Managing Conservator's exclusive periods of possession, at the place designated in this Standard Possession Order.

5.     <u>Personal Effects</u> - Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

6.     <u>Designation of Competent Adult</u> - Each conservator may designate any competent adult to pick up and return the child, as applicable.  IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or. returned.

7.     <u>Inability to Exercise Possession</u> - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8.     <u>Written Notice</u> - Written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due.

FINAL DECREE OF DIVORCE                                      PAGE   13

This concludes the Standard Possession Order.

Duration.

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

Child Support.

IT IS ORDERED that ROBERT PETER BERG is obligated to pay and shall pay to JOANNE DOROTHY BERG child support of $1200.00 per month, with the first payment being due and payable on March 1, 2000 and a like payment being due and payable on the First day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.      any child reaches the age of eighteen years, provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma or enrolled in courses for joint high school and junior college credit pursuant to Section 130.008, Education Code, the periodic child-support payments shall continue to be due and paid until the end of the month in which the child graduates;

2.      any child marries;

3.      any child dies;

4.      any child's disabilities are otherwise removed for general purposes; or

5.      further order modifying this child support.

Thereafter, ROBERT PETER BERG is ORDERED to pay to JOANNE DOROTHY BERG child support of $1000.00 per month, due and payable on the First day of the first month immediately following the date of the earliest occurrence of one of the events specified in items 1. through 4. above and a like sum of $1000.00 due and payable on the First day of each month thereafter until the next occurrence of one of the events specified above.

Thereafter, ROBERT PETER BERG is ORDERED to pay to JOANNE DOROTHY BERG child support of $800.00 per month, due and payable on the First day of the first month immediately following the date of the earliest occurrence of one of the events specified in items 1. through 4. above and a like sum of $800.00 due and payable on the First day of each month thereafter until the next occurrence of one of the events specified above.

IT IS ORDERED that all payments shall be made through the Johnson County Child Support Office, Cleburne, Texas and then remitted by that agency to JOANNE DOROTHY BERG for the support of the children. IT IS FURTHER ORDERED that ROBERT PETER BERG shall pay, when due, all fees charged by that agency.

IT IS FURTHER ORDERED that ROBERT PETER BERG shall notify this Court and JOANNE DOROTHY BERG by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of ROBERT PETER BERG and the name and address of obligor's current employer, whenever that information becomes available.

IT IS ORDERED that if JOANNE DOROTHY BERG intends to change the county of the residence of the children from their present residence JOANNE DOROTHY BERG shall give written notice to ROBERT PETER BERG of her intent no later than seven days prior to changing such residence or as soon thereafter as the new county or address is known to JOANNE DOROTHY BERG.

IT IS ORDERED that, on the request of a prosecuting attorney, the attorney general, the friend of the Court, JOANNE DOROTHY BERG, or ROBERT PETER BERG, the clerk of this Court shall cause a certified copy of the "Employer's Order to Withhold from Earnings for Child Support" to be delivered to any employer. IT IS FURTHER ORDERED that the clerk of this Court

shall attach a copy of subchapter C of chapter 158 of the Texas Family Code for the information of any employer.

Health Care.

IT IS ORDERED that medical support shall be provided for the children as follows:

1.      It is the intent and purpose of this decree that JOANNE DOROTHY BERG shall, at all times, provide medical support for the children and ROBERT PETER BERG shall reimburse JOANNE DOROTHY BERG for the cost of medical insurance coverage for the children. IT IS THEREFORE ORDERED that JOANNE DOROTHY BERG shall provide medical insurance for the parties' children, for as long as child support is payable under the terms of this decree, as set out herein.

IT IS ORDERED that as additional child support ROBERT PETER BERG shall reimburse JOANNE DOROTHY BERG for the cost of medical insurance coverage for the children paid by JOANNE DOROTHY BERG by paying the amount of reimbursement on the first day of April 2000 and on the first day of each month thereafter for so long as child support is payable under this order to JOANNE DOROTHY BERG through the Johnson County, Texas child support office, to be forwarded to JOANNE DOROTHY BERG by that office.   The present cost of medical insurance coverage for the children is $———————— per month. *SHALL BE FURNISHED TO ROBERT PETER BERG BY JOANNE DOROTHY BERG within 15 DAYS.*

2.      Definition - "Health insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, and may be provided in the form of an indemnity insurance contract or plan, a preferred provider organization or plan, a health maintenance organization, or any combination thereof.

3.      Claim Forms - Except as provided  below, the party who is not carrying the health insurance policy covering the children is ORDERED to submit to the party carrying the policy, within

ten days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children.

The party who is carrying the health insurance policy covering the children is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of the children to the insurance carrier within ten days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

4.      Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by the party carrying the health insurance policy covering the children from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of the children shall belong to the party who incurred and paid those expenses.   IT IS FURTHER ORDERED that the party carrying the policy is designated a constructive trustee to receive any insurance checks or payments for health-care expenses incurred and paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits, to the other party within three days of receiving them.

5.      Filing by Party Not Carrying Insurance - In accordance with article 3.51-13 of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children may, at that party's option, file directly with the insurance carrier with whom coverage is provided for the benefit of the children any claims for health-care expenses, including, but not limited to, medical, hospitalization, and dental costs.

6.      Secondary Coverage - IT IS ORDERED that nothing in this decree shall prevent either party from providing secondary health insurance coverage for the children at that party's sole cost and expense.  IT IS FURTHER ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available

FINAL DECREE OF DIVORCE                                                    PAGE  17

to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

7.      Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to carrier, second opinions, and the like.  Each party is ORDERED to attempt to use "preferred providers," or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required.  Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced due to the failure of a party to follow procedures or requirements of the carrier, that party shall be wholly responsible for the increased portion of that bill.

If health insurance coverage for the children is provided through a health maintenance organization (HMO) or preferred provider organization (PPO), the parties are ORDERED to use health-care providers who are employed by the HMO or approved by the PPO whenever feasible. If health-care expenses are incurred by using that HMO or PPO plan, ROBERT PETER BERG is ORDERED to pay Fifty percent and JOANNE DOROTHY BERG is ORDERED to pay Fifty percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the parties' children, including, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges, for as long as child support is payable under the terms of this decree.  If a party incurs health-care expenses for a child by using the services of health-care providers not employed by the HMO or approved by the PPO, except in an emergency, without the written agreement of the other party, the party incurring the

FINAL DECREE OF DIVORCE                                                    PAGE  18

services is ORDERED to pay One Hundred percent and the other party is ORDERED to pay zero percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the parties' children, as set out above.  If a party incurs health-care expenses for a child by using the services of health-care providers not employed by the HMO or approved by the PPO in an emergency or with the written agreement of the other party, the party incurring the services is ORDERED to pay Fifty percent and the other party is ORDERED to pay Fifty percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the parties' children, as set out above.

If the children are enrolled in a health-care plan that is not an HMO or a PPO, ROBERT PETER BERG is ORDERED to pay Fifty percent and JOANNE DOROTHY BERG is ORDERED to pay Fifty percent of all reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of the parties' children, including, without limitation, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges, for as long as child support is payable under the terms of this decree.

8.      Payment of Uninsured Expenses - IT IS ORDERED that the party who pays for a health-care expense on behalf of the children shall submit to the other party, within ten days of receiving them, all forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of the health-care expenses the paying party incurs on behalf of the children.  IT IS FURTHER ORDERED that, within ten days after the nonpaying party receives the explanation of benefits stating benefits paid, that party shall pay his or her share of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the paying party for any advance payment exceeding the paying party's share of the expenses.

9.      Exclusions - The provisions above concerning uninsured expenses shall not be

interpreted to include expenses for travel to and from the health-care provider or nonprescription medication.

10.    Reasonableness of Charges - IT IS ORDERED that reasonableness of the charges for health-care expenses shall be presumed on presentation of the bill to a party and that disallowance of the bill by a health insurer shall not excuse that party's obligation to make payment or reimbursement as otherwise provided herein.

11.    Information Required - IT IS ORDERED that a party providing health insurance shall furnish to the other party and the local domestic relations office the following information no later than the thirtieth day after the date the notice of the rendition of this decree is received:

(a)    the Social Security number of the party providing insurance;

(b)    the name and address of the employer of the party providing insurance;

(c)    whether the employer is self-insured or has health insurance available;

(d)    proof that health insurance has been provided for the children; and

(e)    the name of the health insurance carrier, the number of the policy, a copy of the policy and schedule of benefits, a health insurance membership card, claim forms, and any other information necessary to submit a claim or, if the employer is self-insured, a copy of the schedule of benefits, a membership card, claim forms, and any other information necessary to submit a claim.

IT IS FURTHER ORDERED that any party carrying health insurance on the children shall furnish to the other party a copy of any renewals or changes to the policy no later than the fifteenth day after the renewal or change is received.

IT IS FURTHER ORDERED that a party providing health insurance shall provide to the other party and the local domestic relations office any additional information regarding health insurance coverage that becomes available to the party providing insurance.  IT IS FURTHER ORDERED that the information shall be provided no later than the fifteenth day after the date the

information is received.

12.     Termination or Lapse of Insurance - If the health insurance coverage for the children lapses or terminates, the party who is providing the insurance is ORDERED to notify the other party no later than the fifteenth day after the date of termination or lapse.

13.     Place of Transmittal - IT IS ORDERED that all bills, invoices, statements, claims, explanations of benefits, insurance policies, medical insurance identification cards, other documents, and written notices, as well as payments, required to be transmitted by one party to the other under the health-care coverage and health insurance provisions of this decree shall be transmitted by the sending party to the residence of the receiving party.

14.     WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED.

No Credit for Informal Payments.

IT IS ORDERED that the child support as prescribed in this decree shall be exclusively discharged in the manner ordered and that any direct payments made by ROBERT PETER BERG to JOANNE DOROTHY BERG or any expenditures incurred by ROBERT PETER BERG during ROBERT PETER BERG's periods of possession of or access to the children, as prescribed in this decree, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this decree.

Support as Obligation of Estate.

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of ROBERT PETER BERG and shall not terminate on the death of ROBERT PETER BERG.  Payments received for the benefit of the children from the Social Security Administration,

FINAL DECREE OF DIVORCE                                                                PAGE  21

Department of Veterans Affairs, other government agency, or life insurance shall be a credit against this obligation.

Medical Notification.

Each party is ORDERED to inform the other party within twenty-four hours of any medical condition of the parties' children requiring surgical intervention, hospitalization, or both.

Information Regarding Parties and Children

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name: ROBERT PETER BERG

Social Security number:   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

Driver's license number:   13892096          Issuing state:   Texas

Current residence address:   P. O. Box 817, Cleburne, Texas 76033

Mailing address:   P. O. Box 817, Cleburne, Texas 76033

Home telephone number:   817  558-7165

Name of employer:   Self

Address of employment:   Home Address

Work telephone number:   817  774-0459

Name: JOANNE DOROTHY BERG

Social Security number:   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

Driver's license number   16080797          Issuing state:   Texas

Current residence address:   Bandera, Texas

Mailing address:   Bandera, Texas

Home telephone number:   (830) 796-7099

Name of employer:   Self

Address of employment:       Home Address

Work telephone number:       (830) 796 - 7961

Name: JOSIE ANN BERG

Social Security number:       none

Driver's license number:       None   Issuing state:   None

Current residence address:       Bandera, Texas

Mailing address:       Same

Home telephone number:       n/a

Name of employer:       none

Address of employment:       none

Work telephone number:       none

Name: ROBERT COLIN BERG

Social Security number:       none

Driver's license number:       None   Issuing state:   None

Current residence address:       Bandera, Texas

Mailing address:       Same

Home telephone number:       n/a

Name of employer:       none

Address of employment:       none

Work telephone number:       none

Name: KATHRYN MARY SUSAN BERG

Social Security number:       none

Driver's license number:       None   Issuing state:   None

Current residence address:       Bandera, Texas

Mailing address:        Same

Home telephone number:        n/a

Name of employer:        none

Address of employment:        none

Work telephone number:        none

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER.  THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE.  IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION

TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of the Court or by registered or certified mail addressed to the clerk. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Central File Maintenance, P.O. Box 12048, Austin, Texas 78711-2048.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

9.    *Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate,

having due regard for the rights of each party and the children of the marriage.

Property to Husband.

IT IS ORDERED AND DECREED that the husband, ROBERT PETER BERG, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1.    The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

      a.    All property located in Australia in the name of the parties, or either of them, except Respondent's personal effects boxed and located in the house.

H-2.    The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment:

      a.    As shown on the attached Exhibit "A", the mediated settlement agreement of the parties signed February 10, 2000.

H-3.    All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-4.    All sums of cash in the possession of the husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control.

H-5.    The 1999 Dodge Ram Pickup motor vehicle, together with all prepaid insurance, keys, and title documents.

H-6.    The business known as Bob Berg Buckles, including but not limited to all fixtures, inventory, cash, receivables, accounts, goods, and supplies; and all rights and privileges, past, present,

or future, arising out of or in connection with the operation of the business.

H-7.    The business known as Silverdales and/or Silverdale , including but not limited to all fixtures,   inventory, cash, receivables, accounts, goods, and supplies;  and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

H-8    The Sundowner trailer in the possession of Robert Peter Berg.

H-9    The Hollidock horse and four head of cattle in the possession of Robert Peter Berg.

H-10   The gun collection, save and except one pearl handled pistol which is awarded to Respondent, in the possession of Robert Peter Berg.

H-11   Three business booths described as each consisting of 6 display cases, a 20' back wall, 4 display stands, one 10' x 20' carpet; security fence; 3 folding tables, 5 back wall lights, and desk lamp.

Property to Wife.

IT IS ORDERED AND DECREED that the wife, JOANNE DOROTHY BERG, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1.   The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

a.       All real property located in Bandera County, Texas in the name of the parties, or either of them.

W-2.   All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control.

W-3.   All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control.

W-4.   All sums of cash in the possession of the wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control.

W-5.   All individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the wife's name.

W-6.   All policies of life insurance (including cash values) insuring the wife's life.

W-7.   All brokerage accounts, stocks, bonds, mutual funds, and securities registered in the wife's name, together with all dividends, splits, and other rights and privileges in connection with them.

W-8.   The motor vehicle(s), together with all prepaid insurance, keys, and title documents in her possession or control.

W-9.   The business known as Hy O Silver, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business.

W-10   All inventory in the possession of Michael Bowles, Receiver.

W-11   The net proceeds from the sale of property, both real and personal, located at Sand Flat, Texas.

W-12   One business booth as described is paragraph H-11 above.

Division of Debt.

Debts to Husband

IT IS ORDERED AND DECREED that the husband, ROBERT PETER BERG, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her

property harmless from any failure to so discharge, these items:

H-1.   The balance due, including principal, interest, and all other charges, on the promissory note given as part of the purchase price of and secured by a lien on the motor vehicle awarded to the husband.

H-2.   Any and all debts, charges, liabilities, and other obligations incurred solely by the husband from and after February 1, 1999 unless express provision is made in this decree to the contrary.

H-3.   All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the husband in this decree unless express provision is made in this decree to the contrary.

Debts to Wife.

IT IS ORDERED AND DECREED that the wife, JOANNE DOROTHY BERG, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

W-1.   The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by ROBERT PETER BERG and JOANNE DOROTHY BERG and secured by deed of trust on the real property awarded in this decree to the wife, which is recorded in the Deed of Trust Records of Bandera County, Texas.

W-2.   The balance due, including principal, interest, and all other charges, on the promissory note, if any, given as part of the purchase price of the motor vehicle(s) awarded to the wife.

W-3.   Any and all debts, charges, liabilities, and other obligations incurred solely by the wife from and after February 1, 1999 unless express provision is made in this decree to the contrary.

W-4.   All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the wife in this decree unless express

provision is made in this decree to the contrary.

Notice.

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

### Provisions Dealing with Sale of Residence

IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon belonging to the parties at Sand Flat, Johnson County, Texas, including the personal property not awarded to ROBERT PETER BERG shall be sold under the following terms and conditions:

1.     Michael Bowles is appointed receiver for the purpose of selling the property. The Receiver shall list the real property with a duly licensed real estate broker having sales experience in the area where the property is located, provided further that the real estate broker shall be an active member in the Multiple Listing Service. The personal property shall be sold by the Receiver by any method selected by the Receiver.

2.     The property shall be sold for a price determined by the Receiver.

3.     Any payments of principal, interest, taxes, and insurance on the property made during the pendency of the sale shall be made by the Receiver or Respondent. The Receiver shall have exclusive control of the premises until closing. Any maintenance and repairs done to the property pending closing shall be paid for by the Receiver or Respondent.

4.     The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property, and any cost of maintenance or repairs) shall be distributed by the Receiver to Respondent.

Attorney's Fees.

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the children, each party shall be responsible for his or her own attorney's fees incurred as a result of legal representation in this case.

Treatment/Allocation of Community Income for Year of Divorce.

IT IS ORDERED AND DECREED that, for the calendar year 2000, each party shall file an individual income tax return in accordance with the Internal Revenue Code.

IT IS ORDERED AND DECREED that for calendar year 2000, each party shall indemnify and hold the other party and his or her property harmless from any tax liability associated with the reporting party's individual tax return for that year unless the parties have agreed to allocate their tax liability in a manner different from that reflected on their returns.

IT IS ORDERED AND DECREED that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for 2000 within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2001. As requested information becomes available after that date, it shall be provided within ten days of receipt.

IT IS ORDERED AND DECREED that each party shall preserve for a period of seven years from the date of divorce all financial records relating to the community estate. Each party is ORDERED to allow the other party access to these records to determine acquisition dates or tax basis or to respond to an IRS examination within five days of receipt of written notice from the other party. Access shall include the right to copy the records.

IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate.