FILED
UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
U.S. COURT FILED
DEC 14 2004
Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT P. BERG<br>d/b/a BOB BERG BUCKLES<br>d/b/a SILVERDALES,<br><br>Plaintiff,<br><br>v.<br><br>JOANNE SYMONS<br>d/b/a HYOSILVER, et al.,<br><br>Defendants. | § § § § § § § § § § § § | Civil Action No. H-03-2683 |

## DECLARATION OF ROBERT P. BERG IN SUPPORT OF HIS MOTION TO CLARIFY

1. My name is Robert Peter Berg. I am more commonly known as Bob Berg.

2. I and Joanne Symons are former spouses of a marriage that terminated on March 3, 2000, after Ms. Symons had informed me that she was having a long-term affair with her present husband.

3. Our negotiations of the terms of the divorce decree spanned several months.

4. Leading up to the decree, we first entered into a Rule 11 Agreement on or about October 19, 1999. We subsequently had discussions from that time until February 11, 2000 when we signed a Mediated Settlement Agreement.

5. Joanne Symons' attorneys then prepared the Final Decree of Divorce (a copy of which is attached as Exhibit A). Both of us approved and signed the decree, which was then signed and entered by the Court on March 3, 2000.

6. In agreeing to the terms of the divorce decree, Ms. Symons bargained for and received custody of our three children and our house in Bandera, Texas.

7. She also negotiated that I was to leave my house in Cleburne (Sand Flats), Texas, and have this house, and all of my belongings in this house, auctioned off with the proceeds going to her.

8. Ms. Symons also received the vast majority of our common possessions, and even approximately $200,000 worth of existing jewelry inventory.

9. In exchange, Ms. Symons agreed to give up any and all rights arising from or created in connection with the operation of the Bob Berg Buckles and Silverdales businesses and that I was to receive these businesses "free and clear."

10. I had started these two businesses prior to the marriage. All of my jewelry designs, the "Bob Berg" signature look, and my name, fame, and reputation in the United States and Australia as a master western jewelry was created in connection with the operation of these businesses.

11. My separate company in Australia, Bob Berg, PTY., Ltd., which was created in 1980 well prior to my marriage to Ms. Symons, had in fact sponsored my E-2 Visa (and Ms. Symons as a derivative) specifically to continue the business of Bob Berg PTY, Ltd. and to expand it into the United States. My wife has admitted in prior testimony that Bob Berg PTY, Ltd. was my separate property and that Bob Berg Buckles and Silverdales was a continuation of that business.

12. Our "free and clear" agreement was then placed into the divorce decree written by Ms. Symons' lawyers at H-6 and H-7. In this consent decree, as agreed, all past, present, or future rights arising out of or in connection with the operation of Bob Berg

Buckles and Silverdales businesses were awarded to me. She was to have nothing to do with my two businesses.

13. At no time did Ms. Symons have my authority to make or posses Bob Berg buckle blanks for Hy O Silver or on her own behalf.

14. After the divorce was entered by the Court on March 3, 2000, Ms. Symons engaged in a number of unfair practices that were contrary to the divorce agreement.

15. For example, Ms. Symons without my permission or knowledge, subverted my manufacturing personnel, factory, signature jewelry designs, and even raw materials, to manufacture copies of my Bob Berg jewelry for sale by her newly formed company, Hy O Silver.

16. Moreover, again without my permission, Ms. Symons appropriated mirror images of my advertising showing my signature jewelry designs to promote the sales of her Hy O Silver imitations in the same markets.

17. She also represented to my customers that I was no longer in business and/or that my business name had changed to Hy O Silver. Contrary to the terms of the divorce, she used my local and 800 telephone numbers for Bob Berg Buckles and Silverdales as her local and 800 telephone numbers.

18. She even diverted funds from a contract for rodeo buckles between Bob Berg Buckles and the Reno Rodeo using buckles made and paid for by Bob Berg Buckles.

19. She has since been in a continuous mode of competing unfairly with me using products and practices that trade upon my intellectual property rights.

///

///

20. Ms. Symons actions were not only contrary to United States law, she also misused her authority as an officer of Bob Berg PTY (and Bob Berg Buckles) to take away business from Bob Berg PTY (and Bob Berg Buckles), divert inventory, monies, and materials belonging to these companies to her own misuse, and usurped business opportunities belonging to these businesses and took these opportunities to her business. She never returned customer lists in her custody that belonged to these businesses nor did she give up the telephone numbers and other intangible and physical property. She violated duties of loyalty not only to me personally when she was my wife but duties to the corporation arising from her position.

21. Legally fighting my ex-wife was not an easy personal choice for me, but her actions are usurping my rights to control my intellectual property, and her unlawful conduct is diluting the value of my work. By imitating my work, and pretending to the public that she has the right to do so, she has induced others to also imitate my work which further dilutes the value of my work in an irreparable manner.

22. I do hereby swear and affirm under penalty of perjury that the foregoing is true.

Executed on December ____, 2004 at Las Vegas, Nevada.

_____
Robert Peter Berg

19. Ms. Symons actions were not only contrary to United States law, she also misused her authority as an officer of Bob Berg PTY (and Bob Berg Buckles) to take away business from Bob Berg PTY (and Bob Berg Buckles), divert inventory, monies, and materials belonging to these companies to her own misuse, and usurped business opportunities belonging to these businesses and took these opportunities to her business. She never returned customer lists in her custody that belonged to these businesses nor did she give up the telephone numbers and other intangible and physical property. She violated duties of loyalty not only to me personally when she was my wife but duties to the corporation arising from her position.

20. Legally fighting my ex-wife was not an easy personal choice for me, but her actions are usurping my rights to control my intellectual property, and her unlawful conduct is diluting the value of my work. By imitating my work, and pretending to the public that she has the right to do so, she has induced others to also imitate my work which further dilutes the value of my work in an irreparable manner.

21. I do hereby swear and affirm under penalty of perjury that the foregoing is true.

Executed on December 13, 2004 at Las Vegas, Nevada

Robert Peter Berg

4