IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT P. BERG D/B/A** § | | |
| **BOB BERG BUCKLES D/B/A** § | | |
| **SILVERDALES,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | **CIVIL ACTION NO. H-03-2683** |
| § | | |
| **JOANNE SYMONS D/B/A** § | | |
| **HYOSILVER, et al** § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OF LAW ON
DEFENDANT'S DEFENSE OF LICENSE**

Defendant, Joanne Symons d/b/a Hy O Silver, respectfully submits this memorandum of law regarding her defense to Plaintiff's causes of action for copyright infringement, trade dress infringement, dilution, and common law trademark infringement and unfair competition.

**I.       INTRODUCTION**

At the summary judgment stage, Ms. Symons argued that she was the co-owner of any copyrights due to the fact that they were not divided in the parties' Divorce Decree. This Court denied Ms. Symons' Motion for Summary Judgment of Co-ownership, holding that Ms. Symons is not a co-owner of Mr. Berg's copyrights for the purpose of use or management, though she may have had a continuing right to the income stream from those copyrights.

1

At trial, Ms. Symons argued not that she is a co-owner of the intellectual property at issue, but rather that the Divorce Decree gives her a license to continue to make and sell the designs she was making and selling at all times before the Divorce Decree was signed. Ms. Symons' position as a licensee of the rights and interests allegedly held by the Plaintiff, Mr. Berg, prevent her from being liable for copyright infringement, trade dress infringement, dilution, or common law trademark infringement and unfair competition.

## II.    FACTS

It is uncontested that, under the Rule 11 Agreement, Ms. Symons was able to take and fill orders of product covered by Mr. Berg's asserted copyrights and/or trade dress. *See* Rule 11 Agreement, Defendant's Trial Exhibit No. 6. It is uncontested that a large part of Bob Berg Buckles' business consisted of custom-ordered buckles and that many of those buckle orders were for multiple pieces, which were awarded to rodeo contestants or to volunteers for their efforts. It is also uncontested that custom orders generally took several weeks to fill.

The Rule 11 Agreement, on its face gave both parties the right to keep as separate property any orders taken for delivery after a certain date. As Ms. Symons testified, that paragraph was intended to allow her to continue to take custom orders, which were then filled with product covered by Mr. Berg's asserted copyrights and/or trade dress. Ms. Symons testified that the Rule 11 Agreement allowed her to fill those orders with product made in the Bob Berg Buckles factory in Mexico with material and molds owned by Bob Berg Buckles.   Mr. Berg offered no evidence or testimony to contradict these assertions.

The Rule 11 Agreement was also clear on its face that Ms. Symons was not allowed to sell under the name Bob Berg Buckles or Silverdales. Ms. Symons testified that she therefore created the company known as Hy O Silver. She testified that at all times leading up to the final decree of divorce, Hy O Silver existed for only one purpose – to take custom orders and sell inventory, many of which were covered by Mr. Berg's asserted copyrights and/or trade dress. Again, Mr. Berg offered no testimony or evidence to contradict these assertions. Additionally, Mr. Berg had at least one forum more than four years ago to ask a Court to enjoin Ms. Symons from making buckles and jewelry that infringed his copyrights and/or trade dress. Mr. Berg offered into evidence the transcript of a November 21, 2000 injunction hearing in Johnson County in which he raised issues regarding Ms. Symons' use of his name, telephone number and post office box. Despite the fact that evidence was presented that Ms. Symons was manufacturing and selling his copyrighted designs and new designs with his so-called "signature look", he did not ask the Court to enjoin her from doing so.

The divorce decree, as well as the parties actions, shows that the parties intended for Ms. Symons, d/b/a Hy O Silver, to have a non-exclusive license to the copyrights at issue, as well as the trade dress.

### III. ARGUMENT

#### A. The Language in the Divorce Decree Is Unambiguous

Under Paragraph W-9 of the Divorce Decree, Ms. Symons was awarded:

> the business known as Hy O Silver, including, but not limited to all furniture, fixtures, machinery, equipment, cash, receivables accounts, goods; and supplies; all personal property used in connection with the operation of the business; and **all rights and privileges, past, present, or**

>**future**, arising out of or in connection with the operation of the business (emphasis added)

Divorce Decree at W-9, Defendant's Trial Exhibit No. 2.  Ms. Symons testified that, at the time of signing, her "rights" as Hy O Silver included taking and filling orders for buckles and jewelry that had the so-called "Bob Berg Elements" and taking orders for buckles and jewelry that were covered by Mr. Berg's asserted copyrights and trade dress.  Ms. Symons contends that the language was specifically designed to allow Ms. Symons and Mr. Berg to both continue doing exactly as they had been doing before the divorce, albeit as separate entities.  Mr. Berg did not offer contrary evidence or dispute the fact that Ms. Symons, as Hy O Silver, had these rights at the time the Decree was signed.  In addition, Mr. Berg has offered no evidence or testimony as to what the phrase "all rights and privileges, past, present, or future" could refer if it does not in fact refer to Ms. Symons' rights and privileges related to the copyrights and trade dress at issue.

When construing a contract, no language is to be considered extraneous.  Rather, the Court must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless.  *Int'l Turbine Servs Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002); See also *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *Portland Gasoline Co. v. Superior Marketing Co.*, 243 S.W.2d 823, 824 (1951).

Mr. Berg's argument seems to be that Ms. Symons was granted **only** the right to sell the jewelry in possession of the receiver, which was awarded to her under Paragraph W-10 of the Decree.  There is no evidence to support Mr. Berg's position.  This inventory is listed in a separate paragraph, and was not intended to be read as part of Paragraph W-

4

9 discussing Ms. Symons rights. Nowhere does W-10 relate back to W-9 and nowhere does the limitation proposed by Mr. Berg occur.

In addition, Mr. Berg argues that a like paragraph did not appear in the Mediated Settlement Agreement, which he asserts was supposed to evidence the parties' entire intent. This argument fails as well. *See* Defendant's Trial Exhibit No. 5. The Mediated Settlement Agreement was never intended to be the sole document dividing property and prescribing rights as evidenced by the fact that the Mediated Settlement Agreement was attached as Exhibit "A" to the Divorce Decree. The Decree refers to Exhibit "A" for certain property divisions but includes many new terms as well. The inclusion of the Mediated Settlement Agreement as an exhibit shows that it was intended to be included, rather than superseded, by the Divorce Decree. It also shows that the Mediated Settlement Agreement was never intended to be all-inclusive. Therefore, the Plaintiff's argument that the parties did not intend anything not evidence in the Mediated Settlement Agreement must fail.

### B. Parties' Intent Favors Ms. Symons' Construction of the Decree

Texas law clearly states that courts must enforce unambiguous language in a contract as written, and the applicable standard is the objective intent evidenced by the language used, rather than the subjective intent of the parties. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996). However, if this Court believes the language is ambiguous, Texas contract law instructs the Court to look at the extraneous material evidencing the intent of the parties. In this instance, the Court should come to the same conclusion regardless of whether the contract is found either ambiguous or unambiguous.

5

During the evidence portion of trial, Ms. Symons testified and evidence was introduced that Mr. Berg was facing contempt of court charges for violating the Rule 11 Agreement for failing to comply with the rules of the receivership. The Mediated Settlement Agreement was reached the night before the Contempt hearing and Mr. Berg therefore may have mediated rights away that he later wished he had not.

Mr. Berg testified that all he wanted was his business. In fact, he walked away with real property in Australia, as well as bank accounts, a truck and trailer, a horse and cattle, a gun collection, insurance policies, retirement accounts and benefits, and personal effects. The only things of value Ms. Symons received were the trailer in which she resides, an automobile, and the inventory remaining in the hands of the receiver. She received no money, only community debts.

Ms. Symons played a large role in building Bob Berg Buckles from the ground up. While the business bore his name, they operated as equal partners. As Mr. Berg testified, he spent much of his time on the road, while Ms. Symons stayed behind running the office. In fact, rebuttal evidence was offered during trial where Mr. Berg testified under oath in another case that Bob Berg Buckles was a partnership between Mr. Berg and Ms. Symons. That testimony, interestingly, occurred after the two separated and should be considered an admission against interest. See FRE 801(d)(2)

Ms. Symons testified that the Mediated Settlement Agreement was reached on the eve of a hearing on a Motion for Contempt filed against Mr. Berg. If the division of property seemed unfairly in favor of Ms. Symons, that was due to the fact that Mr. Berg had been "caught" by the receiver violating the terms of the receivership and was thus forced to negotiate from a lesser position. Ms. Symons testified that, at all times, it was

the intent of both parties that she receive the right to continue to make the pre-divorce designs that she and Mr. Berg made together as business partners, as well as to create her own new designs with similar elements. The facts that Ms. Symons had been his partner for sixteen years and that she had the upper hand in the negotiations due to Mr. Berg's nefarious acts, are further evidence supporting her argument.

There was also testimony from former employee Sharon Archer, who testified that Mr. Berg purposely sent her to Hy O Silver booths at various trade shows with instructions to check out her inventory to ensure that she was only making the pre-divorce designs and had not copied any designs he had created post divorce. Mr. Berg offered no testimony to contradict Ms. Archer's testimony. The evidence entered at trial supports Ms. Symons' assertion that she was to receive a license to the copyrights and trade dress created during the parties' marriage.

### C. If Plaintiff Does Have Protectable Trade Dress Rights, the Divorce Decree Gives Ms. Symons a License That Trade Dress

#### 1. Mr. Berg has not proven the requisite distinctiveness required for trade dress protection.

In order for Mr. Berg to prevail in his actions related to trade dress infringement, he must show both that his trade dress is protectable and that there is a likelihood of confusion between his trade dress and that of the Defendant. *Pebble Beach Co. v. Tour 18, Inc.*, 155 F.3d 526, 536 (5th Cir. 1998). Trade dress is protectable if it is either inherently distinctive or if it has acquired secondary meaning. *Id.*

Suggestive, arbitrary, or fanciful trade dress is inherently distinctive and is protectable without a showing of secondary meaning, while descriptive trade dress is not inherently distinctive and requires the Plaintiff to show that his trade dress has acquired

secondary meaning. *Id.* Mr. Berg's works are not inherently distinctive because they are merely variations on common themes in the western jewelry industry. *See Id.* (finding that "golf-hole designs were not inherently distinctive because they were variations on commonplace themes in the design of golf holes").

Mr. Berg's trade dress is at most descriptive and is possibly generic[1]. Assuming that Plaintiff's trade dress reaches the level of being considered descriptive, he must then show that his trade dress has acquired secondary meaning. Secondary meaning requires "a mental association in buyers' minds between the alleged mark and a single source of the product." *Sno-Wizard Mfg., Inc. v. Eisemann Products Co.*, 791 F.2d 423, 426 (5th Cir. 1986). The following factors can be used to determine secondary meaning:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress.

*Pebble Beach Co.*, 155 F.3d at 541. In evaluating each factor, the focus should be on how it demonstrates that the meaning of the mark or trade dress has been altered in the minds of consumers." *Id*. Mr. Berg has provided little to no evidence[2] to show how the public views his trade dress or that the public associates the elements Mr. Berg claims as his trade dress with either him or his business. In light of the fact that several courts have found the lack of survey evidence to be an insurmountable failure in the Plaintiff's proof,

---

[1] Generic trade dress is not protectable and identifies a product as being part of a particular class rather than as originating from and individual manufacturer. *See Pebble Beach Co. v. Tour 18, Inc.*, 155 F. 3d 526, 540 (5th Cir. 1998).

[2] The only evidence Mr. Berg has produced relating to secondary meaning is the deposition testimony of Lorainne Owen and the testimony of Michelle Lilie.

the testimony of two individuals is certainly not sufficient to show that the public has associated the "Berg Elements" with the Plaintiff. *See Security Center, Ltd.* and *Vision Center v. Opticks, Inc.*, 596 F.2d 111 (5th Cir. 1979).

### 2. Plaintiff did not prove likelihood of confusion as required to recover for trademark or trade dress infringement.

Should the Court find that Mr. Berg's trade dress is distinctive and therefore protectable, in order for Mr. Berg to prevail on his Lanham Act cause of action, he must also prove that there is a likelihood of confusion between his trade dress and the allegedly infringing products from Ms. Symons. It is undisputed that a finding of trademark or trade dress infringement requires a finding of likelihood of confusion. *Two Pesos v. Taco Cabana*, 505 U.S. 763, 769 (U.S. 1992). Mr. Berg has shown no evidence that any customers were confused by Ms. Symons' products. Neither of Plaintiff's witnesses, Lorraine Owens and Michelle Lilie were confused. In fact, Ms. Lilie admitted that she had not been confused by Ms. Symons' products and had not heard of the Defendant.

It is the Plaintiff's burden to show a likelihood that customers will mistakenly purchase products from the Defendant instead of from the Plaintiff. *Security Center Ltd.*, 750 F.2d at 1301. Mr. Berg offered no evidence that anyone had ever purchased Ms. Symons products mistakenly thinking they were getting a Bob Berg product. In fact, the evidence was exactly the opposite. Ms. Symons went to great lengths with advertising and signage to inform the public that she was Hy O Silver, not Bob Berg Buckles. Mr. Berg has not met his burden with respect to secondary meaning and can therefore not show that his trade dress is distinctive and thus protectable**.**

9

### 3. Plaintiff's Trade Dress Continues to Broaden

Throughout the two plus years over which this case has been pending, Plaintiff had maintained that his trade dress was characterized by:

> heavy, raised, half-rounded edges on which are set one or more oversized, tapered beads, often with smaller beads in descending size centered around a larger bead; vine/leaf scrollwork, often formed of tri-color gold (red, green and yellow) and layered or stacked to provide a 3-dimensional effect; and a black background setting-off and highlighting the scrollwork and beads.

Plaintiff's First Amended Complaint at 3, ¶ 7.  During trial, Plaintiff attempted to broaden that trade dress, at one point claiming that the most discernable feature is the black background and therefore anybody making Western buckles or jewelry with black backgrounds would be an infringer.  "Courts will . . . be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection." *Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 117 (2d Cir., 2001).

 In fact, Defendant's witness Mr. Hugh Weaver testified that every element for which Mr. Berg claims protection had been done in the same combination for decades in the Western industry, with the exception of the graduated beaded edges.  Though Mr. Weaver claims inventorship of buckles with ALL of the so-called Bob Berg elements, he admitted that he does not use those beads throughout the vast majority of his pieces as Mr. Berg does.  In the instance that this Court finds that Mr. Berg does have protectable trade dress rights, it should specifically limit that trade dress to the EXACT combination of elements complained of in this case – raised, half-rounded edges on which are set one or more oversized, tapered beads – in combination with tri-colored gold vine and leaf scrollwork, layered or stacked to create a three-dimensional effect, over a black background.  If the trade dress consists of something less than all of the elements

10

combined, virtually every buckle and jewelry maker in the entire Western industry will be infringing Mr. Berg's trade dress.

IV.     CONCLUSION

There is only one way to read this Divorce Decree – it gives Ms. Symons, as Hy O Silver, **all rights, past, present and future.** There is no limiting language in the Decree, no specific enumeration of rights she retained versus rights she surrendered. The decree in no way restricts Ms. Symons to selling only the inventory she was awarded; in fact, it adds this award of inventory as a separate item, completely distinct from the paragraph awarding the past, present and future rights. Ms. Symons' rights, as Hy O Silver, were simple at that time. She had the right to sell the copyrighted designs, as well as other designs that had the elements that Bob Berg claims as his trade dress. These "rights" became a license upon the signing of the Divorce Decree. That license protects Ms. Symons from any liability for copyright infringement, trade dress infringement, dilution and common law trademark infringement and unfair competition.

Date:  March 18, 2005                        Respectfully submitted,

                                                 **GOLDSTEIN & FAUCETT L.L.P.**

                                                 By: /s/ Jody M. Goldstein
                                                   Jody M. Goldstein
                                                   Edward W. Goldstein
                                                   Holly H. Barnes
                                                   GOLDSTEIN & FAUCETT, LLP
                                                   1177 West Loop South
                                                   Suite 400
                                                   Houston, TX 77027
                                                   Telephone: 713-877-1515
                                                   Facsimile: 713-877-1737

                                              ATTORNEYS FOR DEFENDANT
                                              JOANNE SYMONS

OF COUNSEL
Matthew J.M. Prebeg
Glover Miller Lewis & Prebeg
1500 McGowen Street
Suite 200
Houston, TX. 77027
Telephone: (713) 621-3306
Facsimile: (713) 621-2259