IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ROBERT P. BERG D/B/A** § | |
| **BOB BERG BUCKLES D/B/A** § | |
| **SILVERDALES,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-03-2683 |
| § | |
| **JOANNE SYMONS D/B/A** § | |
| **HYOSILVER,** § | |
| § | |
| **Et. Al** § | |
| § | |
| Defendants. § | |

### MEMORANDUM OF LAW REGARDING COPYRIGHT ISSUES

As the Court is aware, the Plaintiff must generally prove two things to fulfill his burden regarding copyright infringement: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications v. Rural Tel. Service*, 499 U.S. 340, 361 (1991); *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 787 n.57 (5th Cir. 1999).

**I.    PLAINTIFF HAS NOT PROVEN OWNERSHIP OF VALID COPYRIGHTS**

   A.    PLAINTIFF'S WORKS LACK ORIGINALITY

To prove ownership a Plaintiff must show proof of originality, copyrightability, and compliance with applicable statutory formalities. *See Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995); *Engineering Dynamics Inc., vs. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994). "The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author." *Feist Publications v. Rural Tel. Service*, 499 U.S. at 345. Originality requires "that the

1

work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 358 (citing 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT §§ 2.01[A], [B] (1990)).

With respect to the originality of Plaintiff's works, upon the introduction of a valid copyright registration, the burden then shifts to the defendant to prove that the plaintiff copied from a prior work and therefore his work lacks originality. *See Entertainment Research v. Genesis Creative Group*, 122 F.3d 1211, 1217 (9th Cir. 1997); *See Ocean Coast Properties, Inc.,* 97 F.3d 1504, 1513 (1st Cir. 1996); *Masquerade Novelty v. Unique Industries*, 912 F.2d 663, 668 (3d Cir. 1990). Therefore, in the event that the Court finds that Plaintiff Berg has a valid copyright registration, the burden then shifts to Ms. Symons to show that Plaintiff's works lack originality. Ms. Symons must offer proof "that the plaintiff's product was copied from other works or similarly probative evidence." *See Ocean Coast Properties*, 97 F.3d at 1513 (citing *Masquerade Novelty*, 912 F.2d at 668, 669).

Ms. Symons has offered evidence via direct testimony of her witness, Hugh Weaver, that Plaintiff Berg copied the allegedly original elements of his works from the prior works of Mr. Weaver. Such direct evidence is sufficient to show lack of originality. *CMM Cable Rep v. Ocean Coast Props.*, 97 F.3d 1504, 1513 (1st Cir. 1996) 3-12 *Nimmer on Copyright* § 12.1[B]. To the extent that the Court does not find that such testimony comprises direct evidence of Plaintiff having copied the prior works, Defendant has at a minimum offered evidence that (1) Plaintiff Berg had access to the prior works of Mr. Weaver and (2) Plaintiff's works are substantially similar to the prior works.

During trial, Plaintiff withdrew the first five pages of registration No. VA 817-815 (Plaintiff's Exhibit 5) from consideration. Despite the fact that he is no longer asserting those pages, Mr. Berg is still asserting that copyright. And that copyright – in its entirety - remains valid, serving as public notice. The copyright office had no notice that there was any error in the first five pages of deposit material and Mr. Berg currently has copyrights on *all* the designs in that registration, not simply the designs in the designs beginning on page 6 and continuing until the end.

Notably, it was only after Mr. Berg understood that Defendant was challenging the originality of the buckles depicted on those first five pages that he withdrew them from consideration in this case. Ms. Symons testified, using demonstratives, that each and every feature of the buckle blanks that appear on those five pages are identical to buckles created by Mr. Weaver and shown to Mr. Berg prior to his origination date. That lack of originality on those five pages casts aspersions on that entire copyright, as well as any other related copyrights, and they should not be assertable in this case. Such evidence is sufficient to show lack of originality and that Plaintiff Berg's works do not qualify for copyright protection. *North Coast Industries v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1034 (9th Cir., 1992)("[P]roof that the plaintiff copied from prior works should involve the same elements . . . as are required to establish copying by the defendant from the plaintiff, i.e., access and similarity.")(quoting *Nimmer on Copyright* § 12.11[B] n.50 (1991)); *see also R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 685 (S.D. Tex. 2000).

"Once the defendant offers such proof, the burden shifts back to the plaintiff to demonstrate originality." *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 682 (S.D.

Tex. 2000); *See also Ocean Properties,* 97 F.3d at 1513. Plaintiff Berg has offered no proof to demonstrate originality in the face of Ms. Symons' and Mr. Weaver's testimony. Thus Plaintiff Berg's works do not qualify for copyright protection and his action for copyright infringement must fail.

    B.    PLAINTIFF HAS NOT MET HIS BURDEN

The burden is on Mr. Berg to prove that he is the owner of valid copyright registrations. *Feist Publications*, 499 U.S. at 361. Proof of a valid copyright registration constitutes prima facie evidence of a copyright's validity, but that presumption is rebuttable as the burden shifts to the defendant to prove that the plaintiff's copyright is invalid. *R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 682 (S.D. Tex. 2000).

Federal Rule of Evidence 902 provides a list of those documents which are self-authenticating; a certified copy of a public record is self-authenticating. Fed. R. Evid. 902(4) (2004). Because the Plaintiff did not provide a certified copy of some of the copyright registrations asserted by him at trial, he must instead authenticate the documents he asserts are a copyright registration by providing "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). To authenticate a public record, Mr. Berg should have shown "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office…is from the public office where items of this nature are kept." Fed. R. Evid. 901(b)(7). Because Mr. Berg admits that he was not the person who filed the applications for copyright registrations, and because he did not provide any other witnesses on the topic, he is unable to authenticate those registrations for which he has not provided certified copies. Authentication is "a condition precedent to admissibility."

Fed. R. Evid. 901(a).  Mr. Berg had more than two years to acquire certified copies of those registrations, but chose not to. Without authentication, copyright registrations Nos. VA 530-294 and VA 547 192 are inadmissible.

    C.    PLAINTIFF'S FRAUD INVALIDATES COPYRIGHT REGISTRATION

In order to establish fraud on the copyright office that would invalidate a copyright, the Defendant must show fraud in order to rebut the presumption of validity. *See Spectrum Creations, Inc. v. Catalina Lighting, Inc.*, 2001 U.S. Dist. LEXIS 11861, at *45 (W.D. Tex. 2001). To fulfill this burden, the defendant "must establish that the application for copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate ... and that the Copyright Office relied on those misrepresentations." *Id.* The Copyright Act offers protection to derivative works, "but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. §103.[1]

    *1. Plaintiff failed to identify the original author of the pre-existing works*

Plaintiff admitted at trial that he knew the works in the first five pages of the VA 617 815 registration were not subject to copyright protection because they were not original works.  The existence of fraud with respect to a section of the copyright invalidates that copyright as a whole where the inaccuracies were willful or deliberate ... and that the Copyright Office relied on those misrepresentations to the extent that it would not have issued the registration.  Both Ms. Symons and Mr. Weaver testified that (1) Mr. Berg saw Mr. Weaver's works, both in photographs and in person, (2) that Mr.

---

[1] "The fact that the certificate survives a challenge based on fraud on the Copyright Office does not guarantee that it will survive judicial scrutiny on other bases. To the extent that the court examines the subject matter and determines that it is not copyrightable, it may still order the certificate stricken on that basis." 2-7 Nimmer on Copyright § 7.20; citing International Biotical Corp. v. Associated Mills, Inc., 239 F. Supp. 511 (N.D. Ill. 1964).

5

Berg was not making buckles with these elements prior to seeing Mr. Weaver's works and (3) that Mr. Berg knew he was not the true author of the buckle blanks at the time that he made the assertion to the copyright office. Knowingly making misrepresentations rises to the level of willful and deliberate. *See Spectrum Creations, Inc. v. Catalina Lighting, Inc.*, 2001 U.S. Dist. LEXIS 11861, at *45 (W.D. Tex. 2001). Certainly, if the Copyright Office had been aware that Mr. Berg was asserting authorship despite knowing that Mr. Weaver was the true author, it would not have issued the '815 copyright registration since he would have had no copyrights in those works. "Copyright in a work protected under this title vests initially in the author or authors of the work." 17 U.S.C. 201(a).

Furthermore, the sections of the copyright that contain material admittedly not authored by Mr. Berg are still in the Register of Copyrights serving as notice of Mr. Berg's rights.

### 2. *Plaintiff failed to identify works as derivative works*

"A derivative work consists of a contribution of original material to a pre-existing work so as to recast, transform or adapt the pre-existing work." 1-3 Nimmer on Copyright § 3.03. It is the exclusive right of a <u>copyright owner or author</u> to create derivative works. (emphasis added) 17 U.S.C. §106.

Copyright registration will generally be granted for a derivative work so long as the derivative is made <u>lawfully</u>—i.e. the registrant has permission from the original author to make such a derivative. (emphasis added) *See Spectrum Creations, Inc. v. Catalina Lighting, Inc.*, 2001 U.S. Dist. LEXIS 11861 (W.D. Tex. 2001); 17 U.S.C. §103. However, authors of derivative works are granted copyright protection only to the

portions or contributions made to preexisting works that are distinguishable from preexisting works. Derivative work copyrights are not issued to "enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material." *Id* at 48-49.

It is therefore crucial for the examiner to have an understanding of what the applicant claims as new material. The copyright registration is not only granted ex parte, but the whole registration process is primarily based on the honor system. Unlike a patent claim, a claim to copyright is not examined for basic validity before a certificate is issued. *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 143 (D.N.J. 1982) (citing H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. at 157 (1976). "A copyright certificate will be issued through a registration procedure in which the validity of the copyright is not examined." *Donald v. Uarco Business Forms*, 478 F.2d 764, 765 n.1 (8th Cir. 1973) (citing 17 U.S.C. § 1). It is undisputed that the Copyright Office has neither the facilities nor the authority to rule upon the factual basis of applications for registration or renewal, and that where an application is fair upon its face, the Office cannot refuse to perform the "ministerial duty" of registration imposed upon [it] by the law. *Cadence Indus. Corp. v. Ringer*, 450 F. Supp. 59, 65 (S.D.N.Y. 1978) (quoting in *part Bouve v. Twentieth Century Fox Film Corp.*, 122 F.2d 51 (1941)). "There is no such [patent-type] search or examination when a copyright is secured. It issued almost automatically and there is no prior art to contend with." Stein v. Benaderet, 109 F. Supp. 364, 366 (E.D. Mich. 1952).

There is virtually no check on the breadth of the applicant's claim. Yet, when the applicant proffers this same piece of paper to a court during an infringement suit, he is

7

generously given a prima facie presumption that both the copyright and all the facts stated in the certificate are valid. 17 U.S.C. 410(c) (1996).[2]

In an application for a derivative work, failure to properly list the underlying works prevents the examiner from deciding originality, and therefore registrability of the copyright claim. Moreover, section 6(a) contains by far the most important question on the entire registration application for compilations and derivative works because the applicant's response to 6(a) actually defines the scope of his copyright claim. *Article: On Section 411 of the Copyright Code and Determining the Proper Scope of a Copyright Registration*, 34 San Diego L. Rev. 343, 379 (1997).

Here, there are at least two vital pieces of information the Copyright Office never had a chance to consider: first, that the works in each of the later applications were derivatives, and second, that Mr. Berg was not even the author of the underlying works. Berg has admitted that he knowingly registered pre-existing works that he does not own, without notifying the copyright office of this fact. He also admitted that the works in each of the registrations being asserted in this case were derivatives. Had the copyright office been aware of these facts, it seems certain it would have rejected these registrations.

## II.   PLAINTIFF HAS NOT PROVEN ANY DAMAGES INFORMATION

The copyright act provides two possible methods of computing the damages available to a successful plaintiff in a copyright infringement action: (1) the copyright owner's actual damages and any additional profits of the Defendant attributable to the

---

[2] Courts have in some cases refused to apply the presumption of validity when the copyright registration is deemed too vague to properly identify the material covered by the copyright. See, e.g., *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 39 U.S.P.Q.2d (BNA) 1294, 1301 (S.D.N.Y. 1996); *Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 386 (D. Utah 1991).

infringement and not used in the calculation of actual damages, or (2) anytime before final judgment a plaintiff may elect to receive statutory damages as provided in 17 U.S.C. § 504(c).  17 U.S.C. § 504.   Mr. Berg was precluded from pursuing a damage model based on lost profits due to errors during the discovery process.  Mr. Berg failed to prove the amount of profit gained by Ms. Symons' alleged infringement.  To establish profits, the copyright owner is required "to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g C., Inc.,* 807 F. d 1110, 1118 (2d Cir. 1986).

The Second Circuit explained that "gross revenue" as used in this section, means "gross revenue reasonably related to the infringement, not unrelated revenues."  *Davis v. The Gap, Inc.,* 246 F. 3d 152, 160 (2nd Cir. 2001); The Fifth Circuit followed the Second Circuit in *Sefton v. Webbworld, Inc.,* 2003 U.S. Dist. LEXIS 6431 (N.D. 2003), holding "even if the Court were to accept Plaintiff's testimony regarding [defendant]'s monthly gross profits, he is not entitled to recover any part of the same because he has failed to prove that portion of [defendant]'s gross profits where were attributable to Defendant's infringement of his copyrighted images." *Id., citing Vane v. The Fair, Inc.,* 676 F. Supp. 133, 137 (E.D. Tex. 1987). *Aff'd sub nom. Estate of Vane v. The Fair, Inc.,* 849 F. 2d 186 (5th Cir. 1998).  Mr. Berg admitted that not all of Ms. Symons designs infringe his copyrights, yet he failed to distinguish between revenue derived from allegedly infringing product and revenue derived from non-infringing product. Like the Plaintiff in *Davis*, Mr. Berg should be precluded from recovering damages based on gross revenues.

Mr. Berg is therefore limited to recover statutory damages.  Where the Plaintiff is unable to prove actual damages, the Court is given wide discretion to determine the statutory remedy.  *Fermata International Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1263 (S.D.Tex. 1989).  Given Ms. Symons' belief that she was licensed to practice the designs covered by Mr. Berg's asserted copyright registrations, this Court should use its discretion to set damages at the lowest end of the statutory range, if it indeed finds Mr. Berg's copyrights to be both valid and infringed.  Statutory damages for non-willful infringement range from "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Statutory damages are per copyrighted work, not per instance of infringement. 4-14 Nimmer on Copyright § 14.04.

For the purposes of determining statutory damages, compilations and derivative works constitute only one work.  17 U.S.C. § 504(c)(1).  Because Mr. Berg admitted that the '617 and '815 copyrights are derivative works, this Court, upon a finding of infringement, should hold that Ms. Symons has infringed only two works. [3]  Therefore, upon a finding of infringement, the Court should award Mr. Berg between $1,500 and $60,000.  Because Ms. Symons believed she had a license, she should be found to be an innocent infringer and the Court's award should be on the low end of that range.

### III. CONCLUSION

After a one-week trial, this Court has seen and heard far more evidence than the U.S. Copyright Office when it was examining Mr. Berg's copyright applications.  The Copyright Office was never notified that his applications were based on derivative works.

---

[3] In reality, upon a finding of infringement, the Court should hold that Ms. Symons infringed only the '617 copyright, since the '815 should be thrown out based on fraud.  In that instance, Ms. Symons should be found liable for damages between $750 and $30,000.

10

The U.S. Copyright Office, whose application process is based on the honor system, never got to review the underlying works to either (1) reject or accept the new works as non-registerable or registerable, or (2) to limit the scope of the registrations as to only the material that was new.  Just as significant, the U.S. Copyright Office never got to hear the testimony of Ms. Symons and Mr. Weaver that Mr. Berg was not the original author of those works.  Mr. Berg certainly did not offer that information.  While the majority of errors on Mr. Berg's applications may be considered only clerical, the failure to identify the underlying works and the failure to identify Mr. Weaver's contributions were material omissions that would have either resulted in an outright rejection, or certainly in a limitation in scope.  This Court does not need to hold the registrations void, but should render them non-assertable until at least such time as Mr. Berg has corrected his applications and re-registered these works.


Date:  March 18, 2005                              Respectfully submitted,

                                                   **GOLDSTEIN & FAUCETT L.L.P.**


                                                   By:  /s Jody M. Goldstein
                                                        Jody M. Goldstein
                                                        State Bar No. 24002153
                                                        Edward W. Goldstein
                                                        Holly H. Barnes
                                                        1177 West Loop South
                                                        Suite 400
                                                        Houston, TX 77027
                                                        Telephone: 713-877-1515
                                                        Facsimile: 713-877-1737

                                                        ATTORNEYS FOR DEFENDANT

                                                  JOANNE SYMONS

OF COUNSEL  
Matthew J.M. Prebeg  
Glover Miller Lewis & Prebeg  
1500 McGowen Street  
Suite 200  
Houston, TX. 77027  
Telephone: (713) 621-3306  
Facsimile: (713) 621-2259  

        F:\CLIENT\7\7966 J Symons\002\Memorandum of Law-copyright (2).doc