**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT P. BERG D/B/A** | § | |
| **BOB BERG BUCKLES D/B/A** | § | |
| **SILVERDALES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-03-2683** |
| | § | |
| **JOANNE SYMONS D/B/A** | § | |
| **HYOSILVER,** | § | |
| | § | |
| **Et. Al** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT JOANNE SYMONS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR CONTEMPT**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Ms. Joanne Symons hereby files this Opposition to Plaintiff Robert P. Berg's Motion for Contempt and respectfully asks the Court to deny Mr. Berg the relief sought.

**I.     FACTS**

In the Judgment dated September 30 2005, this Court found Ms. Symons had infringed 40 copyrighted designs owned by Mr. Berg. Each of the designs complained about by the Plaintiff in his Motion for Contempt was being produced and sold by Ms. Symons prior to the trial. Yet more than half of the designs complained about in his Motion for Contempt were not even among the 40 Ms. Symons was found to have infringed.

As per the Court's order, Ms. Symons did, in fact, turn over all designs that are copies of those that appear in Mr. Berg's copyright registrations.  She also complied with the damages portion of the judgment.[1]

In that same judgment, this Court found that Mr. Berg had not established trade dress rights and that he could not keep Ms. Symons from creating her own designs with similar elements to those he had copyrighted.

In his Motion for Contempt, Mr. Berg attempts (1) to get the Court to find infringement where it did not find it after trial, (2) to get the Court to keep Ms. Symons from using western motifs that are "industry standard" and (3) to get the Court to levy additional fines (as well as mounting legal bills) in an attempt to put Ms. Symons out of business.

## II.    ARGUMENT

### A.  Law Of the Case Doctrine Bars Mr. Berg From Re-trying the Case

Ms. Symons testified via affidavit that each of the designs appearing on the exhibits attached to Plaintiff's Motion for Contempt were in production and offered for sale prior to the trial in this case (see Symons affidavit, Paragraphs 6-7, attached hereto as Defendant's Exhibit A).   Therefore, Mr. Berg had an opportunity to present evidence at trial that each of these designs infringed his copyright or were derivatives of his copyright.

Twenty-one of the designs Mr. Berg claimed as infringements in his Motion for Contempt were not found to be infringements at trial.  Specifically, Nos. 5505, 4015, 3003, 4514, 6511, 4014, 3002, 6501, 6502, 2024, 7007, 6507, 4518, 4018, 4505, 2002,

---

[1] The parties agreed to a settlement offer with an initial payment, followed by monthly installments.  Ms. Symons made the initial payment. The monthly installments do not begin until 2006.

6525, 6526, 6527, 6524 and 6523, all of which appear in Exhibits E through M attached to Plaintiff's Motion for Contempt, were not found by this Court to be infringing designs.[2]

Mr. Berg is now barred from asking the Court to "re-try" this issue by the "law of the case doctrine", which restricts the scope of subsequent proceedings, "regardless of whether the issue was decided expressly or by necessary implication." *HCC Aviation Ins. Group, Inc. v. Emplrs Reinsurance Corp.,* 2005 U.S. Dist. LEXIS 19992 (N.D. Tex. 2005); *Dickinson v. Auto Center Mfg. Co*., 733 F.2d 1092, 1098 (5th Cir. 1983); *O'Cheskey v. United States*, 2001 U.S. Dist. LEXIS 21370, 14-15 (D. Tex. 2001);   See also *Christianson v. Colt. Indus. Operating Corp*., 486 U.S. 800, 815-16, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988) (holding "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

Ms. Symons' exhibits her products on her website and at various rodeos and trade shows around the country.  She pictures her products in advertisements.   Mr. Berg knew of these products before the trial.  He had his opportunity to ask the Court to find these designs to be infringing his copyrights or infringing derivatives of his copyrighted works. He failed to produce the necessary evidence and argument to convince the Court at trial and is not entitled to another bite of the apple at this time.

**B.  Mr. Berg is Trying to Capture Trade Dress Rights Despite the Court's Ruling**

Mr. Berg's Motion for Contempt is a blatant attempt to convince the Court to enter the trade dress rights it was unwilling to grant at the close of a week-long trial.

---

[2] An exhaustive list of the 40 designs found to have been infringed appears in footnote 13 on Page 34 of the Memorandum and Opinion Setting Out Findings of Fact and Conclusions of Law of September 30, 2005.

For example, on Page 5 of his Motion for Contempt, Mr. Berg claims that Ms. Symons can not use a flower design with a stone in the middle. In Exhibit G, attached to his Motion, Mr. Berg shows two pieces - #6510, which appears to be a single flower pendant with a stone inside, and #4509, which appears to be earrings, which are a single flower with a stone inside.

Ms. Symons presented testimony, as well as documentary evidence, at trial proving that flowers with a single stone inside are common motifs in western jewelry. The Court found that evidence to be credible and relied on it while making the determination that Mr. Berg's jewelry was not inherently distinctive and therefore was not entitled to trade dress protection:

> The evidence shows that Berg's jewelry and buckle designs use design elements that are common motifs in western jewelry; a raised beaded edge, leaf-and-vine scrollwork designs, flower designs, and metallic colors are all used in the highly stylized look of western jewelry. *See Big Island Candies,* 269 F. Supp. 2d at 1248-9….The evidence at trial showed that western jewelry and belt buckles use highly stylized elements. There are a limited number of configurations or design elements architecturally compatible with the jewelry or buckle structures on which they are placed and stylistically compatible with the "western" look. The same elements are often present. The vine-and-leaf scrollwork, flower design, and metallic color occupy a "generic emblem" status. A stylized edge is common in western jewelry; Symons explained at trial that a "rope edge" or "berry edge" is considered industry standard…. Credible evidence showed that vine-and-leaf scrollwork was an "industry standard"; that a number of buckle designers used round graduated beads on edges; that at least two-color gold is frequently used; and that a black background is often used in western buckle and jewelry designs.

Memorandum and Opinion Setting Out Finds of Fact and Conclusions of law, pages 44-45.

Ms. Symons did, in fact, market earrings and a pendant with a single flower, which she turned over to Mr. Berg's attorneys as instructed by the Court's Order. Mr. Berg now says that this bracelet is a derivative work because it contains a string of single flowers, each with a stone inside. If every piece of jewelry and belt buckle that displayed a single flower with a stone inside is a derivative of the two pieces pictured in Plaintiff's Exhibit G, nearly every piece of Ms. Symons' inventory, as well as every piece of western jewelry and every western belt buckle on the market – both new and vintage - would be considered a derivative (see for example, Defendant's Exhibit B, attached hereto, which pictures numerous vintage and current belt buckles dating from the 1930s copied from the book entitled The Western Buckle). Clearly, this is an example of Mr. Berg attempting to gain trade dress protection despite the Court's refusal to award such rights.

### C. Unprotectable Elements Should Not Be Considered

In making the determination of whether Ms. Symons' works are derivative of those copyrighted by Mr. Berg, the Court should first separate the original elements from those that are unoriginal and therefore not copyrightable. In this instance, the Court should not look at the vine and leaf scrollwork or single flowers which the Court itself deemed to be the "industry standard." Memorandum and Opinion, Page 45. This Court also found that two-color gold is frequently used, as is a black background. Even graduated beads on edges are used by "a number of buckle designers." Memorandum and Opinion, Page 45.

> The resemblances relied upon as a basis for finding probative similarity must refer to "constituent elements of the [copyrighted] work that are original." *Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Thus, in examining whether actual copying has occurred, a

court must engage in dissection of the copyrighted work by separating
its original, protected expressive elements from those aspects that are not
copyrightable because they represent unprotected ideas or unoriginal
expressions.

Johnson v. Gordon, 409 F.3d 12, 19 (1st Cir. 2005), citing *Concrete Machinery Co. v.*

*Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988).

With only a couple of notable exceptions which will be discussed later[3], every

argument in Mr. Berg's Motion involves elements that this Court found to be industry

standard.   For example, in Exhibit E, Mr. Berg complains that both Mr. Berg and Ms.

Symons create works that feature "circular designs of the same size and others feature

circular designs of different sizes,"  referring to a single flower inside of a circle.

Plaintiff's Motion for Contempt, Page 4.   Again, Mr. Berg now appears to be asking the

Court to refuse to allow Ms. Symons the right to make any designs with a flower inside

of a circle despite this Court's refusal to grant trade dress rights.

Mr. Berg also complains of the Hy O Silver logo which appears on the final page

of Exhibit E.  First, it should be noted that this logo does not even contain the beaded

edge that Mr. Berg has long claimed to be one of the most significant elements in the

"Bob Berg look".   It should also be noted that this logo is a spur with a single flower in

the center.  Nowhere in the copyrights asserted at trial was there a spur of any sort.

In Exhibit H, Mr. Berg compares Bob Berg cuff bracelets with those offered by

Hy O Silver.  While Mr. Berg does not own and can not claim trade dress rights to the

shape of the bracelets, he again complains that the two companies produce bracelets,

---

[3] Exhibit D to Plaintiff's Motion is a page from Ms. Symons' website that displays a pair of earrings that
remains from the divorce stock she was awarded.   Exhibits D, F and I contain pictures of infringing
designs that were inadvertently left on Ms. Symons' website.  Ms. Symons does not, in fact, retain these
infringing designs in her inventory, nor has she taken orders for such designs as per the Court's Order.   As
of the date of this Opposition, Ms. Symons has removed these photographs from her website.

"featuring a substantially similar circular flower design superimposed on ornate vine and leaf scrollwork."  Plaintiff's Motion, Page 5.  Again, this Court was very clear in its Memorandum that a "circular flower design superimposed on ornate vine and leaf scrollwork" is in no way indicative of a Bob Berg design.   "The credible evidence showed that vine-and-leaf scrollwork was an 'industry standard…'"  Memorandum and Opinion, Page 45.   The Memorandum and Opinion goes on to explain "common use within an industry weakens the ability of the design or configuration to indicate a particular source.  Distinctive trade dress is more difficult to show in markets that are themselves characterized by a well-defined "look" or genre.  Memorandum and Opinion, Page 50.   It was well established at trial by credible evidence that vine-and-leaf scrollwork is what identifies a piece as being "western" in genre.

In Exhibit I, Mr. Berg compares belt buckles.  It is common knowledge that a rectangular shape has been common in the belt buckle industry – both western and otherwise – long before Mr. Berg or Ms. Symons began in the business.   In his Motion, Mr. Berg says that "Exhibit I shows Berg's copyrighted basic rectangular pattern design" as embodied in buckles, conchos, earrings…..   Ms. Symons is unaware of any Bob Berg copyright for "a basic rectangular pattern design."[4]

In Exhibit J, Mr. Berg compares knives created by Bob Berg and Hy O Silver.  In fact, the two knives are in fact of different shapes.  Again, Mr. Berg's complaint in his Motion is that "her design substantially copies the three roses with leaf scroll design."  Again, this Court declined to give Mr. Berg trade dress for a vine-and-leaf scroll design

---

[4] Mr. Berg does not complain of the use of "figures" inside the buckle, but it should be noted that (1) these figures are different and (2) figures are common themes in belt buckles.  See Pages 140 and 141 from The Western Buckle, attached hereto as Defendant's Exhibit C, showing the use of the figures in buckles dating back to the 1940s and 50s.

with flower superimposed on top.   To do so would be to put the majority of western jewelers and belt buckle makers out of business.

In Exhibit K, Mr. Berg only complains that Ms. Symons' tapered rings are derivatives of those authored by Mr. Berg, but fails to explain this conclusion.  In fact, several of the rings of which Mr. Berg complains have very little in common with those of Mr. Berg but for the black background and beaded edge.  Ring #R0014 on Exhibit K, for example, has a horseshoe with several small stones in it, with one large diamond-like stone set in the middle.  While it is admittedly difficult to determine the exact features of Mr. Berg's rings due to the poor quality of the Exhibits provided to the Defendant, it appears clear that his ring does not contain those features.   The other two rings on the bottom row under "Symons" also contain large stones in the center.   Mr. Berg did not display any photographs or jewelry or belt buckles with a similar look during trial, nor do any appear in his copyrights.

In Exhibit L, Mr. Berg pictures four cross pendants, "featuring his flower and scroll leaf design."  (Plaintiff's Motion for Contempt, page 6).   He complains of "Symons' substantially similar or derivative earrings and pendants."   (Plaintiff's Motion, page 6).   First, he doesn't describe to the Court why he believes they are substantially similar or derivative.  More significantly, however, he is again trying to get the Court to find that the "flower and scroll leaf design" is protectible, which the Court expressly denied in its Memorandum and Opinion.  A close look at Ms. Symons' cross earrings and pendants in Exhibit L will show that none are shaped the same as Mr. Berg's crosses.

Two of the crosses Mr. Berg complains about do not even contain a raised edge or beads.[5]

In Exhibit M, Mr. Berg again complains that Ms. Symons "is using the same single flower leaf scroll leaf design." (Plaintiff's Motion for Contempt, Page 6) Pictured on Exhibit M are three triangular-shaped pieces by Mr. Berg. Below are pictured nine pieces by Ms. Symons, all of which are square and diamond shaped. They are being compared to Ms. Symons' pieces which have beads on each edge. The only thing Mr. Berg seems to be complaining of is the fact that his pieces and her pieces both have a single flower in the middle. Again, the Court was very clear in its holding that Mr. Berg has no protectible rights to the use of a flower in western jewelry and he therefore has no rights to keep others from using that feature. "There are a limited number of configurations or design elements architecturally compatible with the jewelry or buckle structures on which they are placed and stylistically compatible with the 'western look'." Memorandum and Opinion, Page 44.

The bottom line is that each of the Hy O Silver pieces that Mr. Berg complains about in Exhibits D through M have elements in common with his own. It was made clear at trial that Ms. Symons' designs contained elements that were not unlike those of Mr. Berg. It was made clear at trial that many others in the business also use design elements that are similar to those used by Mr. Berg and Ms. Symons. It was equally clear that this Court held that Mr. Berg had not proven his "look" was unique enough to achieve trade dress rights and that Ms. Symons can continue to produce designs with black background, with vine-and-leaf scrollwork, with raised and beaded edges and with

---

[5] It should be noted that crosses are common themes in western jewelry. See Symons' Ex. A, Paragraph 12.

tri-color gold.  What Ms. Symons can not do is produce the designs that Mr. Berg has

copyrighted.   There are no allegations she has done so.  Ms. Symons turned over many

thousands of dollars worth of inventory that the Court deemed infringing and has been

paying damages for her past mistakes.  Mr. Berg and his attorneys refuse to leave well

enough alone.  They were dissatisfied with the Court's ruling that Mr. Berg had no trade

dress rights and are now trying to get in the back door and obtain those rights

nonetheless.

> **D.  Infringing Photographs Were Mistakenly Left On the Hy O Silver**
> **Website**

Ms. Symons concedes that Mr. Berg's Motion has merit in three areas.  A few of

the Exhibits do contain photographs of the infringing works.  With the exception of one,

they were mistakenly left on the website despite the fact that Ms. Symons turned all

product over to Mr. Berg's attorneys.  (See Symons Affidavit, Paragraphs 8-9)   As of the

date of this Opposition, those photographs have now been removed.   The one exception

is Exhibit D.  Pictured in Exhibit D is a pair of Bob Berg earrings that remains from the

stock awarded to Ms. Symons in the divorce.  As has been explained to Mr. Berg and his

attorneys multiple times,  that stock is listed at a "close out price" so that Ms. Symons get

rid of it.  As Plaintiff's Exhibit D clearly shows, these earrings are listed as a "close out"

item.  They are found on her website under a link for "close out" items.

The second page of Plaintiff's Exhibit  F shows a group picture of custom items

Ms. Symons produced for customers in the past.  That picture inadvertently had several

pieces that infringed Mr. Berg's copyrights.  That picture has now been removed from the

website.  On the third page of Plaintiff's Exhibit I, there appears a photo with three

conchos.  Two of those conchos infringed Mr. Berg's copyrights.  Ms. Symons indicated

in the copy accompanying those pictures that those two designs are no longer available to indicate that she is no longer producing those designs and customers can no longer order those designs.    She has now removed that photograph from her website entirely and asks the Court and Mr. Berg to forgive her for the oversight.

### III.    CONCLUSION

Ms. Symons has repeatedly told this Court that she wants nothing more than to pay any debt owed for her past mistakes and move on.  Moving on, unfortunately, involves seeing Mr. Berg and going head-to-head at various trade shows and rodeos throughout the year.  Since the trial concluded, Mr. Berg has been hauled into Court twice on Motions for Contempt for interfering with Ms. Symons' attempts to run her business.  Both times, he was found to have acted in a way to interfere with her business and its reputation.    This is just another attempt to do so.

There have been no allegations that Ms. Symons has refused to turn over infringing inventory, or that she continues to make the designs that appear in Mr. Berg's copyright registrations.    Instead, Mr. Berg now complains that each of her designs is a derivative of his.    However, in his Motion for Contempt he does nothing to point out all the similarities between Ms. Symons' designs and his own.  In nearly every instance, he complains about either the rose design, the vine and leaf scrollwork, the rose design WITH the vine and leaf scrollwork, or the shape of the piece.    Mr. Berg does not have copyright registrations on shapes and the Court was crystal clear that he does not have trade dress rights.    To deem these works as derivatives would be to de facto award trade dress rights that this Court was unwilling to do at the conclusion of the trial.

Date:  December 30, 2005                    Respectfully submitted,

                                            **GOLDSTEIN & FAUCETT L.L.P.**


                                            By:  /s/ Edward W. Goldstein
                                                 Edward W. Goldstein, Esq.
                                                 State Bar No. 08099500
                                                 Jody M. Goldstein, Esq.
                                                 State Bar No. 24002153
                                                 **Goldstein & Faucett, LLP**
                                                 1177 West Loop South, Suite 400
                                                 Houston, TX 77027
                                                 Telephone: 713-877-1515
                                                 Facsimile: 713-877-1737

                                                 ATTORNEYS FOR DEFENDANT
                                                 JOANNE SYMONS

OF COUNSEL

Mark Wisner, Esq.
State Bar No.  21819370
**Mark Wisner & Associates**
1177 West Loop South, Suite 400
Houston, TX. 77027
Telephone: (713) 785-0555
Facsimile: (713) 785-0561

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on December 30, 2005, the foregoing document(s)

entitled Defendant Joanne Symons' Opposition to Plaintiff's Motion for

Contempt was served upon counsel of record named below via Facsimile and U.S.

Mail:

| *Via Facsimile and U.S. Mail* | *Via Facsimile and U.S. Mail* |
|---|---|
| Philip Golden, Esq. | Sandeep Seth, Esq. |
| **Attorney at Law** | **Seth & Associates** |
| 2626 South Loop West, Suite 650-T | 6750 West Loop South, Suite 920 |
| Houston, TX 77054 | Bellaire, TX 77401 |
| T: (713) 301-9788 | T: (713) 592-6662 |
| F: (866) 457-6405 | F: (713) 592-6632 |

         /s/ Edward W. Goldstein
         Edward W. Goldstein